

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00645-CV

**IN THE INTEREST OF A.Q.C.**, a Child

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA00782
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: December 6, 2023

AFFIRMED

In this case, the trial court terminated Mom's parental rights to her child A.Q.C.[1]  Mom challenges only the legal and factual sufficiency of the evidence for the trial court's finding on the best interest of the child.  Because the evidence was legally and factually sufficient to support the challenged finding under the elevated evidentiary standard, we affirm the trial court's order.

### BACKGROUND

The trial court terminated Mom's and Dad's parental rights to A.Q.C., but Mom is the only appellant; we limit our recitation of the facts to those relating to Mom and the child.  At the bench trial on the merits, the trial court heard testimony from three witnesses.  We summarize their testimony below.

---

[1] We use aliases to protect the child's identity.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

**A.      Case Worker**

The Department's legal case worker testified to the following facts.

*1.      Child's Removal*

The child subject in this suit is A.Q.C.  In May 2022, when A.Q.C. was about ten months old, Mom attempted suicide.  Mom was admitted to the hospital, she tested positive for cocaine, and A.Q.C. was removed.

*2.      Mom's Service Plan*

The Department created, and Mom signed, a service plan.  The plan requires Mom to complete, inter alia, a parenting class, submit to random drug tests, complete a substance abuse assessment and follow all its recommendations, and complete a psychological examination.  Mom's service plan was approved by the court, and it ordered her to comply with the plan.  She was ordered to receive mental health evaluations, which she did.  She was diagnosed with bipolar disorder, major depressive disorder, cocaine disorder, and alcohol use disorder.

*3.      Mom's Plan Compliance*

To treat her conditions, Mom was required to engage in particular services, but she was not consistent in attending her individual therapy sessions, and the therapist's notes showed that Mom was not satisfactorily addressing her issues.

Mom completed her parenting class and parts of her substance abuse treatment, but she did not complete the other ordered actions.  For example, Mom was asked to drug test thirty-eight times; she missed four tests, which were presumed positive, and of the ones she took, she tested positive on two.  She did not provide proof of (1) stable housing, (2) a safe residence for the child, (3) stable employment, (4) consistent interactions with her services providers, or (5) a reliable support system.

*4. Mom's Support for A.Q.C.*

At the time of trial, A.Q.C. was twenty-three months old. But she does not yet speak, she only communicates by yelling, she squeezes her hands, and she just started walking. The case worker was concerned that A.Q.C.'s symptoms may be signs of autism. To allow Mom to attend A.Q.C.'s medical appointments, the Department told Mom when they would be, but Mom did not attend any of them.

Mom's plan included weekly visits with A.Q.C., but of the approximately fifty scheduled visits, she missed eleven. At the visits, Mom does not bring things to care for A.Q.C. during the visit, such as diapers, baby wipes, or extra snacks, and A.Q.C. is not bonded to Mom.

*5. Mom's Communications*

In April 2023, Mom stopped answering her phone. The case worker continued to send Mom information via text messages, but Mom only responded "when she need[ed] something." When she did respond, "[s]he said that she just got into this mood that she didn't want to talk to anybody [and] [s]he cut off everybody, and that was it."

*6. Case Worker's Recommendation*

The case worker recommended that Mom's parental rights be terminated because, inter alia, Mom is continuing to abuse substances; she has not shown she can provide a safe, stable home for A.Q.C.; she has not completed all her ordered services; and she has shown she cannot meet A.Q.C.'s needs.

**B. Housing Specialist**

The housing specialist for Mom's apartment complex testified to the following facts. Mom has a valid lease for herself and two children. On May 3, 2023, the specialist conducted a housekeeping inspection of Mom's apartment. During the inspection, she discovered Mom had six unauthorized persons residing with her, and the apartment had a strong odor of marijuana. She

found multiple lease violations, but she has not been back to Mom's apartment to see if the violations have been corrected. On May 26, 2023, Mom visited the office to add Carla Treviño as a temporary guest, which the specialist allowed until this case is resolved.

**C.      Mom**

Mom testified to the following facts.

*1.      Providing Child's Basic Needs*

She has been working at a convenience store for two weeks, and it is a full-time job. When Mom was asked if she was able to provide for A.Q.C.'s needs; she said "Honestly, like yes or no." Mom explained that because she had just gotten a job with better pay, she would now "be able to start saving and start helping out with my daughter."

*2.      Providing Safe, Stable Residence*

Mom admitted that the six extra people who had been living in her apartment were not authorized to be there, but they no longer live there. Now, the only occupants are herself and her friend Carla Treviño, who takes care of Mom's son.

*3.      Plan Services Compliance*

She has missed some visits with A.Q.C., but she can get an extra hour on future visits to make up for it. When asked about missing her therapy appointments, Mom said she has virtual visits with her counselor, but Mom could not remember the counselor's name.

She denied having a problem with alcohol—she said she just drinks when she goes out. She is attending her Lifetime Recovery sessions three days a week, and she is taking the prescribed medication for her mental health. But she admitted that she was about to be discharged from Lifetime Recovery for attendance problems.

### 4. *Recognizing A.Q.C.'s Special Needs*

Mom did not rebut the case worker's testimony that A.Q.C. was twenty-three months old, but she could not speak, she communicated only by yelling, she squeezed her own hands, and she has just started to walk. The Department asked Mom if A.Q.C. had any special needs. Mom responded: "[T]hey told me what she needs. But when I see my daughter, she just looks like a normal little girl just like my other kids." Mom was not sure if A.Q.C. had any developmental delays, because "when I play with her, she's fine. She walks around."

## D.   Trial Court's Order

The trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code subsections 161.001(b)(1)(N), (O), and (P), and that terminating Mom's parental rights was in A.Q.C.'s best interest. The trial court terminated Mom's parental rights to A.Q.C., and it appointed the Department as A.Q.C.'s permanent managing conservator.

## E.   Mom's Appeal

Mom filed a notice of appeal. She challenges the legal and factual sufficiency of the evidence on the best interest of the child. Before we address Mom's sole issue, we briefly recite the applicable evidentiary and appellate review standards.

### EVIDENCE REQUIRED, STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

"[D]espite the heightened standard of review . . . , the court of appeals must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and

demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

The evidentiary standard[i] the Department must meet and the statutory grounds[ii] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[iii] and factual[iv] sufficiency standards of review. We apply those standards here.

## BEST INTEREST OF THE CHILD

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in A.Q.C.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### A. Unchallenged Statutory Grounds Findings

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Here, the trial court found that Mom constructively abandoned the child; she failed to comply with her court-ordered Family Service Plan; and she used a controlled substance in a manner that endangered the health or safety of the child and (1) failed to complete a court-ordered substance abuse treatment program, or (2) after completion of a court-ordered substance abuse treatment program, she continued to abuse a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P).

Mom does not challenge any of those findings, and we need not address them. *See* TEX. R. APP. P. 38.1(f), (i), 47.1; *In re S.J.R.-Z.*, 537 S.W.3d at 682; *cf. In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (requiring courts to review *challenged* findings on grounds (D) and (E)). Instead, she challenges only the best interest finding.

**B.      Best Interest of the Child Factors**

The Family Code statutory factors[v] and the *Holley* factors[vi] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to A.Q.C.'s best interest.

The trial court heard the following testimony regarding A.Q.C.'s age and vulnerabilities, Mom's course of conduct, and A.Q.C.'s placement.

**C.      Child's Age and Vulnerabilities**

At the time of trial, A.Q.C. was twenty-three months old. She is unable to care for herself, she does not speak, she communicates only by yelling, she squeezes her own hands, and she just started walking. Given these symptoms, the case worker was concerned that A.Q.C. may have autism. A.Q.C. will need speech therapy, physical therapy to help her learn to walk, and potentially, therapy for autism. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D)).

**D.      History of Substance Abuse**

When Mom attempted suicide in May 2022, Mom was admitted to the hospital, and she tested positive for cocaine. For several months thereafter, Mom was drug free, but she continued to drink alcohol—which is a trigger for substance abuse.

Mom started therapy in January 2023, but on March 6, 2023, and April 7, 2023, Mom's drug tests were positive, and by April, Mom had relapsed. About the time she relapsed, she cut off contact with others.

Mom was admonished in her service plan, and ordered by the trial court, that if she did not comply with her plan's requirements, she could lose her parental rights to A.Q.C. She understood what she had to do to get A.Q.C. back, but she did not complete her ordered services that were intended to address her cocaine and alcohol use disorders. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also* TEX. R. EVID. 513; *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same).

### E. Mom's Visits with the Child

In her authorized weekly visits with A.Q.C., Mom visited consistently. But for those visits, Mom did not bring anything to care for A.Q.C., such as diapers, baby wipes, or extra snacks. And according to the case worker, A.Q.C. is not bonded to Mom. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (10), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

### F. Safe, Stable Housing

Under her service plan, Mom was required to provide A.Q.C. with a safe and stable residence. Mom has a valid lease for an apartment, but despite the case worker's three attempts to inspect it, she had not been able to gain access to the apartment to determine if it was safe for A.Q.C. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (H)).

### G. Providing for Child's Needs

Under her service plan, one of Mom's goals was to meet A.Q.C.'s needs for food and clothing. Mom testified that she has been working at a convenience store full-time for about two weeks, she was earning higher pay than her previous job, and she could now start saving to help

with A.Q.C.'s needs. But when asked if she could meet A.Q.C.'s basic needs, Mom acknowledged "Honestly, like yes or no." *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)).

## H.    Child's Placement

In October 2022, the Department placed A.Q.C. with her maternal aunt. The aunt has been taking good care of A.Q.C.; she is meeting A.Q.C.'s physical and emotional needs, and they are bonded to each other. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)). Given this uncontroverted supporting evidence, the trial court could have reasonably inferred that the aunt would also be able to meet A.Q.C.'s future needs. *See In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020) (allowing a factfinder to draw reasonable and logical inferences); *In re D.M.*, 452 S.W.3d at 472 ("A fact finder in a termination case may permissibly infer that a parent's future conduct may well be measured by recent deliberate past conduct as it relates to the same or a similar situation.").

## I.    Ad Litem's Recommendation

The child's ad litem agreed with the Department that it was in A.Q.C.'s best interest that Mom's rights be terminated. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G), (H)).

## J.    Sufficient Evidence

The trial court could have believed the testimony about Mom's (1) history of drug abuse, (2) history of partially treated mental illness, and (3) failure to complete all her other ordered services. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

It could have believed the testimony that A.Q.C. is doing well living with her maternal aunt, and the aunt is meeting A.Q.C.'s present regular and special needs. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

It could also have reasonably inferred that the maternal aunt would continue to meet A.Q.C.'s needs. *See In re Z.N.*, 602 S.W.3d at 545 (drawing reasonable, logical inferences); *In re D.M.*, 452 S.W.3d at 472 (allowing an inference of future conduct based on similar past conduct).

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in the child's best interest for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

## CONCLUSION

Because Mom did not challenge any of the three statutory grounds findings, and the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[ii] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (N), (O), and (P):

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

(P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:

    (i)   failed to complete a court-ordered substance abuse treatment program; or

    (ii)   after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

*Id.* § 161.001(b)(1).

[iii] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020) (quoting *In re J.F.C.*, 96 S.W.3d at 266). We "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* If we "'determine[] that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

[iv] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the entire record and "[we] must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). If the evidence would allow "a factfinder [to] reasonably form a firm belief or conviction about the truth of the [challenged finding]," *id.*, and "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is [not] so significant that a factfinder could not reasonably have formed a firm belief or conviction," *see In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *id.*), the evidence is factually sufficient, *see id.*; *In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25.

[v] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

    (1)   the child's age and physical and mental vulnerabilities;

    (2)   the frequency and nature of out-of-home placements;

    (3)   the magnitude, frequency, and circumstances of the harm to the child;

    (4)   whether the child has been the victim of repeated harm after the initial report and intervention by the department;

    (5)   whether the child is fearful of living in or returning to the child's home;

    (6)   the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

    (7)   whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

    (8)   whether there is a history of substance abuse by the child's family or others who have access to the child's home;

    (9)   whether the perpetrator of the harm to the child is identified;

    (10)   the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

    (11)   the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

    (12)   whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

        (A) minimally adequate health and nutritional care;

        (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

        (C) guidance and supervision consistent with the child's safety;

        (D) a safe physical home environment;

        (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

        (F) an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[vi] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A)  the desires of the child;

(B)  the emotional and physical needs of the child now and in the future;

(C)  the emotional and physical danger to the child now and in the future;

(D)  the parental abilities of the individuals seeking custody;

(E)  the programs available to assist these individuals to promote the best interest of the child;

(F)  the plans for the child by these individuals or by the agency seeking custody;

(G)  the stability of the home or proposed placement;

(H)  the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)  any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).